IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CLAUDE OWEN WILSON, )
)
    Plaintiff, )
)
v. ) Civil Action No. 3:16CV578–HEH
)
DAVID WOODS, )
)
    Defendant. )

## MEMORANDUM OPINION
### (Granting in Part and Denying in Part Motion to Dismiss)

Claude Owen Wilson, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. (Compl., ECF No. 1.)[1] The matter is before the Court on the Motion to Dismiss filed by Defendant David Woods, Richmond City Police Officer ("Officer Woods"). (ECF No. 56.) Wilson filed a "Certificate of Service" with the Court, indicating that he had mailed his Response to Officer Woods; however, Wilson did not file this Response with the Court. (ECF No. 59, at 1.) Despite receiving additional time to file this Response with the Court, Wilson did not file any such Response, and the time to do so has expired. (*See* ECF No. 60, at 1.) For the reasons stated below, the Motion to Dismiss (ECF No. 56) will be granted in part and denied in part.

### I. STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from Wilson's submissions.

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts

sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. WILSON'S ALLEGATIONS

In Wilson's Complaint, he presents the following allegations:

> On October 21, 2015, at approximately 10:00 p.m., [Wilson] was leaving a CVS Pharmacy at 2300 Main St. when [Wilson] came into contact with Richmond City Police Officer David Woods Shield # 612.
> The officer was called in regards to a dispute that took place between [Wilson] [and] the [CVS] store employee. ([Wilson's] plight was CVS stated to him they do not take personal checks [and] [Wilson] demanded to see [the] store policy stating so. Store employee wanted [Wilson] to leave [the] store so that they would not have to comply with [Wilson's] request, henceforth calling officer.)
> [Wilson] attempted to explain his grievance to Officer Woods expressing that he wanted to make a documented complaint against CVS for discrimination. Officer Woods refused to take note of [Wilson's] claim, only asking to see his check. [Wilson] already being told by CVS employee that "They didn't take checks" didn't see the point in showing the officer his personal check, especially since the officer blatantly refused to acknowledge and record his claim. So instead of showing [the officer] his check, he politely told the officer "have a nice day" and walked away.
> Shortly [thereafter and] approximately 4 to 5 minutes [and] two blocks away[], Officer Woods pulled beside [Wilson] [and] exited his vehicle in approaching [Wilson] as [Wilson] continued to walk west on Main St. "Let me speak with you . . .[,]" [Officer Woods] stated in an authorized manner. [Wilson] refused stating he didn't want to speak with him. The officer then asked where [Wilson] was going. (The question[]

3

was to obviously attempt to get [Wilson] to stop voluntarily.) [Wilson] continued walking, stating, "I'm going about my way."

Officer Woods then grabbed [Wilson] by the arm (left) to stop him from walking. [Wilson] [asked] [Officer Woods] why was he putting his hands on [Wilson] . . . and what crime did [Wilson] commit . . . what warrant[ed] him (officer) to grab [Wilson] attempting to put handcuffs on him. Officer's only response was "shut up . . . you want to get hurt?! . . . I'm going to tase you . . .!" "For what? . . . What crime [am] I being accused of? . . . (Because [Wilson] had [his] mobile device in [his] hand, [he] was able to record this incident, but once Officer Woods realized [Wilson] was recording the incident, he snatched the phone throwing it to [the] ground [and] stomping it.)[2]

Officer Woods twisted [Wilson's] left wrist until he was in so much pain he was forced to submit his arms to be cuffed. Once cuffed, Officer Woods stomped on the back of [Wilson's] heel. Never did he "pat frisk" [Wilson], instead [he] dug his hand directly into [Wilson's] left pocket (front) [and] pulled out [Wilson's] personal checkbook. By this time, other officers arrived on the scene and asked "what's the collar?" Officer Woods['s] reply was "this guy tried to cash some stolen checks."

To rebut this false statement, (the police officer never confirmed with the CVS employee what the situation was, never did the CVS employee make a complaint related to [Wilson] attempting to []pass, cash, issue . . . a stolen check . . . in fact, the only time Officer Woods was informed about a check was from [Wilson] himself, when [Wilson] attempted to explain how he felt discriminated against by the CVS employee) [Wilson] provided proof that the checks in his possession [were] his through ID [and] bank statements.

A superior officer instructed Officer Woods if he didn't "have anything else on [Wilson] let him go." Officer Woods reluctantly removed the cuffs, but attempted to keep [Wilson's] phone, bank book [and] ID,

---

[2] In Officer Woods's Motion to Dismiss, Officer Woods indicates that "Wilson has made the video he reference[s] public[ly] available [on] YouTube." (Mem. Supp. Mot. Dismiss 3, ECF No. 58.) Officer Woods argues that "[t]he video also clearly shows that [Officer] Woods was telling Wilson to 'relax' and that he was not being arrested but only detained," and does not show "[Officer] Woods striking Wilson." (*Id.* at 3–4.) When reviewing a motion to dismiss, the Court may consider materials outside of the pleadings if the materials are "integral to and explicitly relied on in the complaint." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (citation omitted). Here, Wilson's Complaint specifically references the video. However, as Officer Woods acknowledges, the video does not depict the entire interaction between Officer Woods and Wilson. (*See* Mem. Supp. Mot. Dismiss 3–4.) Therefore, because the video does not depict the entire interaction between Officer Woods and Wilson, at this stage, taking Wilson's factual allegations as true, the video does not establish that dismissal of Wilson's Complaint is warranted.

telling [Wilson], "Get the [expletive] out of here." (Woods snap[ped] [a] picture of [Wilson] before walking off, without consent.)

On October 22, 2015, [Wilson] filed a formal complaint against Officer Woods with the Richmond City Police Dept. Officer Wyatt was [the] investigation officer. [Wilson] also made [a] complaint to the CVS Corporation Headquarters for slander [and] defamation for making [a] false claim of attempting to issue a "stolen check." CVS investigation informed [Wilson] that the CVS employee made [a] sworn statement that she never mentioned anything about a check to the officer.

On 11/16/2015, [Wilson] served Officer Woods with an affidavit of "Notice of Intent/Statement of Truth" at his place of employment. This affidavit was putting Officer Woods on notice that Plaintiff intended to file [a] civil suit for violation of [Wilson's] 4th, 8th [and] 14th Amendment constitutional rights pertaining to the incident on 10/21/2015. [Officer Woods] was warned that he had 30 days to rebut these claims [or] be in acquiescence. The penalty was a lien placed against his indemnity bond.

Officer Woods never answered claim. Instead, as reprisal for the above mentioned grievance, on 12/15/2015, Officer Woods took a warrant out for [Wilson's] arrest for forgery and stolen checks. ([These] charges were never proven.) Officer Woods never showed up in court after being subpoenaed, nor did [the] CVS employee, to validate these charges.

(Compl. 3–6, ECF No. 1 (ellipses in original) (paragraph numbers omitted).)

Based on the foregoing allegations, the Court construes Wilson to raise the following claims for relief:[3]

---

[3] In Claims One, Two, and Three (a) and (b), Wilson claims that his detention, search, and arrest violated his Fourth and Fourteenth Amendment rights. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. However, the Supreme Court has explained "that where another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (some internal quotations omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Claims One, Two, and Three (a) and (b) fall under the ambit of the Fourth Amendment. *Cf. Albright v. Oliver*, 510 U.S. 266, 268, 274–75 (1994) (holding that there is no "substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause"). Accordingly, the Court analyzes Claims One, Two, and Three (a) and (b) under the Fourth Amendment only.

With respect to Wilson's excessive force claims under the Fourth, Eighth, and Fourteenth Amendments, which are set forth in Claim Four (a), (b), and (c), as set forth herein, the Court concludes that Wilson only states an excessive force claim under the Fourth Amendment. However, because Officer Woods moves to dismiss each excessive force claim separately, the

| | |
|---|---|
| Claim One: | Officer Woods unlawfully detained and searched Wilson on October 21, 2015 in violation of the Fourth Amendment. (*Id.* at 6.) |
| Claim Two: | Officer Woods falsely arrested Wilson on October 21, 2015 in violation of the Fourth Amendment when he, "without probable cause [and] against protest [and] by force, placed [Wilson] in restraints [or] cuffs." (*Id.*) |
| Claim Three: | On December 15, 2015, "when [Officer Woods] ([in the] absence of probable cause [and] [in] sheer malice) obtained a warrant for [Wilson's] arrest for forgery," he (a) falsely arrested Wilson and (b) maliciously prosecuted him. (*Id.*) |
| Claim Four: | On October 21, 2015, Officer Woods "us[ed] excessive force" against Wilson in violation of the (a) Fourth Amendment and (b) Fourteenth Amendment, (c) inflicted "deliberate[ly] cruel [and] unusual punishment" in violation of the Eighth Amendment, and, (d) "committed the tort of assault [and] battery." (*Id.*) |

Plaintiff seeks monetary damages and injunctive relief. (*Id.* at 7.)

## III. ANALYSIS

Officer Woods argues that Wilson's claims regarding his unlawful stop on October 21, 2015 (Claim One) and Officer Woods's use of excessive force during the stop (Claim Four (a), (b), and (c)) should be dismissed (1) for failure to state a claim upon which relief may be granted, and (2) because Officer Woods is entitled to qualified immunity. (Mem. Supp. Mot. Dismiss 1–10.) Officer Woods does not move to dismiss Claim Two, Claim Three (a) and (b), and Claim Four (d). For the reasons stated below, the Motion to Dismiss will be granted in part and denied in part.

---

Court addresses Wilson's excessive force claims under the Fourth, Eighth, and Fourteenth Amendments.

A.      Claim One – Unlawful Detention and Search on October 21, 2015

In Claim One, Wilson alleges that on October 21, 2015, Officer Woods unlawfully detained and searched Wilson. (Compl. 6.) "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion equates to "something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (some internal quotation marks omitted) (quoting *Terry*, 392 U.S. at 27). The Supreme Court has stated that

> [t]he principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.

*Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Here, taking the allegations in Wilson's Complaint as true, the Court concludes that his allegations plausibly suggest that, on October 21, 2015, Officer Woods did not have a reasonable suspicion that Wilson had committed a crime. Specifically, Wilson alleges that the CVS pharmacy employee did not report that Wilson had attempted to use a stolen check and that Wilson had provided proof to Officer Woods that the checks were his checks. (*See* Compl. 4–5.) Without a reasonable, articulable suspicion that Wilson had engaged in criminal activity, Officer Woods did not have a basis for conducting a brief investigatory stop. *Wardlow*, 528 U.S. at 123 (citing *Terry*, 392 U.S. at 30).

Further, because the facts alleged by Wilson plausibly suggest that Officer Woods did not have a reasonable, articulable suspicion of criminal activity warranting a brief, investigatory stop, Officer Woods also did not have a legitimate reason to search Wilson or handcuff him. *See id.* (citation omitted) (explaining that "'reasonable suspicion' is a less demanding standard than probable cause"); *cf. United States v. Hamlin*, 319 F.3d 666, 671 (4th Cir. 2003) ("[T]he use of handcuffs did not convert the encounter into a custodial arrest because the use was reasonably necessary to protect the officer's safety. During [lawful] *Terry* stops, officers may take 'steps reasonably necessary to maintain the status quo and to protect their safety.'" (citation omitted)). Therefore, Wilson plausibly suggests that Officer Woods's actions on October 21, 2015 violated the Fourth Amendment's prohibition on unreasonable searches and seizures.

Officer Woods argues that "even if this Court were to find that the existence of probable cause or the basis for [the] investigatory detention is a 'close call' or even fairly debatable, [Officer] Woods should be entitled to qualified immunity" because "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances." (Mem. Supp. Mot. Dismiss 10 (citation omitted).) "When qualified immunity is asserted, the reviewing court should usually first ask whether the right was violated on the facts alleged, and then determine whether that right was 'clearly established.'" *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012) (citing *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009)); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]e conclude that, while the sequence

8

set forth [in *Saucier v. Katz*, 553 U.S. 194 (2001),] is often appropriate, it should no longer be regarded as mandatory." (first alteration in original)).

It is well established that an investigatory stop must be supported by an officer's reasonable suspicion and any subsequent seizure must be supported by probable cause. *See United States v. Bumpers*, 705 F.3d 168, 171–72 (4th Cir. 2013) (citations omitted); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183–84 (4th Cir. 1996) (citations omitted). Here, because Wilson's allegations plausibly suggest that Officer Woods lacked a reasonable suspicion that Wilson had engaged in criminal activity, and also lacked any probable cause to seize Wilson, Officer Woods is not entitled to qualified immunity at this time. Accordingly, Officer Woods's Motion to Dismiss is denied as to Claim One.

### B. Claim Four (a), (b), and (c) – Use of Force on October 21, 2015

In Claim Four (a), (b), and (c), Wilson alleges that Officer Woods used excessive force during their interaction on October 21, 2015. (Compl. 6.) The "analysis of an excessive force claim brought under § 1983 begins with 'identifying the specific constitutional right allegedly infringed by the challenged application of force.'" *Orem v. Rephann*, 523 F.3d 442, 445 (4th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "[C]laims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person" are governed by the Fourth Amendment. *Id.* at 446 (citation omitted). Specifically, "such claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard."

9

*Graham*, 490 U.S. at 388. After an individual is arrested and is a pretrial detainee awaiting an adjudication of guilt, excessive force claims "are governed by the Due Process Clause of the Fourteenth Amendment." *Young v. Prince George's Cty., Md.*, 355 F.3d 751, 758 (4th Cir. 2004) (citation omitted); *see Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citations omitted). Further, after an individual is convicted and sentenced, excessive force claims are governed by "the Eighth Amendment's protections" against cruel and unusual punishment. *Graham*, 490 U.S. at 392 n.6 (citation omitted).

Here, Wilson alleges that during Officer Woods's allegedly unlawful investigatory stop and seizure of Wilson, Officer Woods "grabbed [Wilson] by the arm (left) to stop him from walking." (Compl. 4.) Wilson also alleges that Officer Woods "twisted [Wilson's] left wrist until he was in so much pain he was forced to submit his arms to be cuffed," and "[o]nce cuffed, Officer Woods stomped on the back of [Wilson's] heel." (*Id.*)

Based on Wilson's allegations, the Fourth Amendment is the applicable constitutional right governing Wilson's excessive force claim because Wilson alleges that Officer Woods used excessive force during an investigatory stop and seizure. (*See id.*) Wilson does not allege that any such excessive force was used when he was a pretrial detainee awaiting adjudication of guilt or after he was convicted and sentenced. Therefore, neither the Fourteenth Amendment nor the Eighth Amendment governs Wilson's excessive force claim. Accordingly, the Motion to Dismiss will be granted as

to Wilson's excessive force claim under the Fourteenth Amendment, set forth in Claim Four (b), and excessive force claim under the Eighth Amendment, set forth in Claim Four (c).

With respect to Wilson's Fourth Amendment excessive force claim, which is set forth in Claim Four (a), Wilson's "Fourth Amendment right to be free of unreasonable seizures" includes a right to be free from "seizures accomplished by excessive force." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citing *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)); *see Williams v. Strickland*, 917 F.3d 763, 768–69 (4th Cir. 2019) (citations omitted). "The test for whether force employed to effect a seizure is excessive is one of 'objective reasonableness under the circumstances.'" *Waterman*, 393 F.3d at 476 (quoting *Graham*, 490 U.S. at 399) (some internal quotation marks omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). Answering this question "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted).

At this stage, taking Wilson's well-pleaded allegations as true, Wilson's allegations plausibly suggest that Officer Woods did not have a lawful basis for stopping Wilson and that Wilson did not pose a threat to Officer Woods. Because Wilson alleges

11

that Officer Woods lacked a lawful basis to stop Wilson, Wilson's allegations plausibly suggest that any use of force by Officer Woods was unreasonable. *Cf. Young*, 355 F.3d at 757–58 (citation omitted) (explaining that an officer's use of force may be considered unreasonable when an individual was "stopped for a minor traffic violation, was completely cooperative and posed little, if no, threat once he was handcuffed behind his back").

Alternatively, Officer Woods argues that he is entitled to qualified immunity. (Mem. Supp. Mot. Dismiss 9–10.) However, in asserting entitlement to qualified immunity, Officer Woods does not specifically address Wilson's Fourth Amendment excessive force claim. When a defendant asserts that he or she is entitled to qualified immunity, he or she "must do more than mention its existence and demand dismissal of the suit." *Fisher v. Neale*, No. 3:10CV486–HEH, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010). Specifically, a defendant must (1) identify the specific right allegedly violated "at the proper level of particularity," *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and, (3) describe with particularity the factual basis supporting the assertion that a reasonable official in the defendant's situation would have believed his conduct was lawful. *See Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990). Based on these requirements, Officer Woods's briefing on qualified immunity with respect to Wilson's Fourth Amendment excessive force claim is inadequate.

Therefore, for the reasons set forth above, Wilson alleges sufficient facts to state a Fourth Amendment excessive force claim regarding his interaction with Officer Woods on October 21, 2015. Further, Officer Woods's briefing on qualified immunity is inadequate. Accordingly, the Motion to Dismiss will be denied as to Claim Four (a). Officer Woods is free to raise the issue of qualified immunity in a motion for summary judgment. The Motion to Dismiss will be granted as to Claim Four (b) and (c).

## IV. CONCLUSION

The Motion to Dismiss (ECF No. 56) will be granted in part and denied in part. Wilson's Fourteenth Amendment excessive force claim, set forth in part of Claim Four (b), and his Eighth Amendment excessive force claim, set forth in Claim Four (c), will be dismissed. The action will proceed on Claim One, Claim Two, Claim Three (a) and (b), and Claim Four (a) and (d). Any party wishing to file a dispositive motion must do so within thirty (30) days of the date of entry hereof.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

Date: May 30, 2019
Richmond, Virginia

13