# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division



FILED
SEP 3 0 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | | |
|---|---|---|
| CLAUDE OWEN WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:16CV578–HEH |
| | ) | |
| DAVID WOODS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Granting Defendant's Motion for Summary Judgment)

Claude Owen Wilson, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C.

§ 1983 action. Wilson's claims flow from his interaction with Defendant David Woods,

Richmond City Police Officer ("Officer Woods"), on October 21, 2015. The following

claims remain before the Court:

> **Claim One:** Officer Woods unlawfully detained and searched Wilson on October 21, 2015 in violation of the Fourth Amendment. (Compl. 6, ECF No. 1).[1]
>
> **Claim Two:** Officer Woods falsely arrested Wilson on October 21, 2015 in violation of the Fourth Amendment when he, "without probable cause [and] against protest [and] by force, placed [Wilson] in restraints [or] cuffs." (*Id.*)
>
> **Claim Three:** On December 15, 2015, "when [Officer Woods] ([in the] absence of probable cause [and] [in] sheer malice) obtained a warrant for [Wilson's] arrest for forgery," he (a) falsely arrested Wilson and (b) maliciously prosecuted him. (*Id.*)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from Wilson's submissions.

Claim Four: On October 21, 2015, Officer Woods "us[ed] excessive force" against Wilson in violation of the (a) Fourth Amendment, and (d) "committed the tort of assault [and] battery." (*Id.*)

Plaintiff seeks monetary damages and injunctive relief. (*Id.* at 7.)

The matter is before the Court on Wilson's Motion for Summary Judgment (ECF No. 63), and Officer Woods's Motion for Summary Judgment (ECF No. 68). Officer Woods responded to Wilson's Motion for Summary Judgment. (ECF No. 67.) Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Wilson has not responded to Officer Woods's Motion for Summary Judgment. For the reasons set forth below, Officer Woods's Motion for Summary Judgment (ECF No. 68) will be granted, and Wilson's Motion for Summary Judgment (ECF No. 63) will be denied.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is

properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.,* 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson,* 477 U.S. at 251 (citing *Improvement Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson,* 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Further, "[w]hen faced with cross-motions for summary judgment, the Court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 62 n.4 (1st

Cir. 1997)). In considering each individual motion, the Court must again resolve factual

disputes and rational inferences drawn therefrom in the light most favorable to the party

opposing that motion. *Id.*

In support of Officer Woods's Motion for Summary Judgment, he submits: (1) his

own declaration ("Woods Decl.," ECF No. 70-1); (2) copies of two warrants of arrest for

Wilson (ECF No. 70-2); (3) the declaration of Richard E. Hill, Jr. ("Hill Decl.," ECF

No. 70-3), declaring that "[t]o the best of my knowledge, the video that is attached as

Exhibit D is a true and accurate copy of the video posted on YouTube . . . .";[2] and, (4) a

compact disc depicting Wilson's video recording of the October 21, 2015 incident.

Wilson did not file a response to Officer Woods's Motion for Summary Judgment;

however, Wilson filed his own Motion for Summary Judgment. (ECF No. 63.) Wilson's

Motion for Summary Judgment addresses his belief that, in Officer's Woods's previously

filed Motion to Dismiss, Officer Woods did "not den[y] any of Plaintiff's verified

claims" and "has failed to contest the monetary damages of $600,000.00." (*Id.* at 1.)

In support of Wilson's Motion for Summary Judgment, he submits an affidavit in

which he states that he is the "affiant," however, it is unclear whether Wilson signed the

affidavit because the signature line indicates that the affidavit is signed by his

"Authorized Representative POA on behalf of CLAUDE OWEN WILSON TRUST."

(ECF No. 64, at 1, 3.) Even considering the affidavit as properly sworn, the affidavit

makes no mention of Wilson's interaction with Officer Woods on October 21, 2015, and

---

[2] The Court notes that the video does not depict the entire interaction between Officer Woods and Wilson.

instead addresses the amount of damages owed to Wilson by Officer Woods. (*See id.* at 1–2.) Thus, the affidavit does not impact the resolution of the Motion for Summary Judgment. Wilson, however, did swear under penalty of perjury to the truth of his statements in his Complaint. (*See* Compl. 6.)

In light of foregoing submissions and principles, the following facts are established with respect to the Motions for Summary Judgment.

## II. SUMMARY OF PERTINENT FACTS

"On October 21, 2015[,] at approximately 11:00 P.M. [Officer Woods] was dispatched to 2400 East Main Street to a CVS for a disorderly conduct call." (Woods Decl. ¶ 5.) "At the time of this incident, [Officer Woods] was employed as an officer with the City of Richmond Police Department." (*Id.* ¶ 3.)

"When [Officer Woods] arrived on scene, [he] observed [Wilson] speaking with the manager, Therese Germain [("the store manager")], inside the store." (*Id.* ¶ 6.) Officer Woods then "requested that Wilson step outside to speak with [Officer Woods]," and "[w]hile speaking with Wilson, [Wilson] stated that the store would not cash his personal checks." (*Id.* ¶ 7; *see* Compl. 3.) Officer Woods asked Wilson "to show [him] the checks to better understand the situation." (Woods Decl. ¶ 7; *see* Compl. 3.) "Wilson informed [Officer Woods] that the checks were in his pocket, but declined to show them to [Officer Woods]." (Woods Decl. ¶ 7; *see* Compl. 3.) Officer Woods "advised Wilson that [he] had no control over CVS and could not force them to accept his checks." (Woods Decl. ¶ 8.) Wilson then "departed the scene." (*Id.*; *see* Compl. 3.)

Officer Woods "then entered the store to speak with the [store] manager." (Woods Decl. ¶ 9.) The store manager "stated that Wilson wanted to cash his personal checks and she asked to see his identification (I.D.), but Wilson refused." (*Id.*) "[The store manager] relayed that she informed Wilson it is store policy to require I.D. prior to cashing a personal check." (*Id.*) The store manager informed Officer Woods that "Wilson became angry and wanted to see the store policy, to which [she] refused." (*Id.* ¶ 10.) The store manager also advised Officer Woods that "after she informed Wilson she could not cash the checks, he then requested to convert the checks to gift cards." (*Id.* ¶ 12.)

"According to [the store manager], Wilson informed her that the address on his I.D. differed from the address on the checks." (*Id.* ¶ 10.) The store manager advised Officer Woods that "she thought the checks were suspicious," and "[s]he noted that the checks appeared to be copies with the amount changed." (*Id.* ¶ 11.) "One check was made out to CVS for $1,000 and dated for October 21, 2015. The other check was made out to CVS for $1,009.90." (*Id.*)

"Based upon this information," Officer Woods determined that "[he] had probable cause to believe that [Wilson] committed or attempted to commit a check fraud felony." (*Id.* ¶ 13.) Officer Woods, therefore, "continued [his] investigation and attempted to again make contact with Wilson." (*Id.*)

Officer Woods "observed Wilson again in the 1800 block of East Main Street," and Officer Woods "advised Wilson that [Officer Woods] needed to speak with him, but he continued to walk away while recording [Officer Woods] on his cell phone." (*Id.*;

6

*see* Compl. 3–4.) Officer Woods then "advised Wilson that he was not free to leave due to the investigation," and "Wilson continued to walk away, yelling and making a scene." (Woods Decl. ¶ 14.) At that time,

> since [Officer Woods] was the sole officer at the scene with Wilson, [Officer Woods] made the decision to place [Wilson] in cuffs due to his evasive behavior, and aggressive posturing. Wilson was trying to leave the scene and [Officer Woods] was concerned that [Wilson] would fight back as the encounter continued.

(*Id.* ¶ 15.)

Wilson then "continued to record on his cell phone, and resisted [Officer Woods's] attempt to restrain him, and place him in handcuffs. Since [Officer Woods] was the only officer on scene, [Officer Woods] advised [Wilson] that if he continued to resist he could be tased." (*Id.* ¶ 16.) Officer Woods "did not tase Wilson." (*Id.*) During this interaction, "Wilson continued to resist, but ultimately, [Officer Woods] was able to handcuff him by bringing his wrists behind his back." (*Id.* ¶ 17.) After Officer Woods handcuffed Wilson, he "asked Wilson to identify himself, or present an I.D. Wilson refused to cooperate." (*Id.* ¶ 18.)

Based on the results of Officer Woods's investigation, including the "information gleaned from CVS, [Officer Woods] believed that Wilson had attempted to commit a felony by passing bad checks at the CVS. [Officer Woods] also believed that Wilson resisted arrest and obstructed [Officer Woods's] investigation." (*Id.* ¶ 19.) Officer Woods then "attempted to retrieve the checks from Wilson's pocke[t] because he informed [Officer Woods] the checks were in his pocket at CVS, and [Officer Woods] believed they were possible evidence of a crime." (*Id.* ¶ 20.) At that time, "Wilson

oriented his body in a way to allow him to record [Officer Woods], while holding his phone behind his back. This prevented [Officer Woods] from retrieving the checks initially." (*Id.* ¶ 21.) Because of Wilson's attempts to evade Officer Woods, Officer Woods "took possession of [Wilson's] cell phone, and was then able to retrieve the checks." (*Id.* ¶ 22.) Upon review of the checks, they "appeared to be copies, and [it] looked as though the dollar amounts were altered on one of the checks. Both checks contained the name 'Claude Wilson', and a New York address." (*Id.* ¶ 23.)

Thereafter, "Detective Calvin Layne, a property crime detective, arrived on scene," and "[b]y this time[,] Wilson had started yelling racist things towards [Officer Woods] and other officers." (*Id.* ¶ 24.) At that time, "[the officers] could not conduct any follow-up investigation with any employees" at CVS because the store had closed for the night. (*Id.* ¶ 25.) Because the officers could not continue the investigation that night, "the detective advised that [Officer Woods] take Wilson's picture and log the checks into property for further investigation." (*Id.*) Officer Woods then released Wilson and returned his cell phone. (*Id.*)

Officer Woods "then looked up the name 'Claude Wilson' in [the police department's] database and noticed that he had an active warrant on file for the City of Richmond." (*Id.* ¶ 26.) Officer Woods observed "[Wilson's] photo in [the] database, and confirm[ed] his identity." (*Id.*) After Officer Woods confirmed the warrant, he "again took Wilson into custody," and "was able to do so without further incident. [Officer Woods] searched Wilson, and transported him to the Justice Center – the City jail. At the

jail, Wilson was served on the active warrant," which was for a prior failure to appear. (*Id.* ¶ 27.) "While being processed, Wilson told the deputies that [Officer Woods] assaulted him and [that] he had injuries all over his back." (*Id.* ¶ 28.) Officer Woods "advised the deputies that [he] did not assault Wilson," and "[t]he deputy and nurse examined [Wilson], but did not locate any injuries." (*Id.* ¶¶ 28–29.)

At a later date, Officer Woods communicated with "Wells Fargo's fraud department to further investigate Wilson's attempt to pass bad checks at CVS." (*Id.* ¶ 30.) The Wells Fargo fraud department "informed [Officer Woods] that there were some issues with [Wilson's] account, and that they would be willing to testify against him in court." (*Id.* ¶ 31.) Based on the information that Officer Woods gathered during the course of his investigation, including "the information provided by [the store manager] at CVS, the suspicious nature of the checks, and the information provided by Wells Fargo, [Officer Woods] obtained warrants against Wilson for violation of Section 18.2–181.1,[3] Code of Virginia, Issuance of Bad Checks." (*Id.* ¶ 32; *see* ECF No. 70–2.)[4]

---

[3] Va. Code Ann. § 18.2–181.1 provides:

> It shall be a Class 6 felony for any person, within a period of 90 days, to issue two or more checks, drafts or orders for the payment of money in violation of § 18.2–181 that have an aggregate represented value of $500 or more and that (i) are drawn upon the same account of any bank, banking institution, trust company or other depository and (ii) are made payable to the same person, firm or corporation.

Va. Code Ann. § 18.2–181.1 (West 2019).

[4] The warrants for Wilson's arrest were issued for violation of Va. Code Ann. § 18.2–181.1, a Class 6 felony, and Va. Code Ann. § 18.2–173, a Class 3 misdemeanor. (ECF No. 70–2.) Va. Code Ann. § 18.2–173 provides:

## III. OFFICER WOODS'S MOTION FOR SUMMARY JUDGMENT

### A.    Claims One and Two – Unlawful Detention and Search, and False Arrest on October 21, 2015

In Claim One, Wilson contends that on October 21, 2015, Officer Woods

unlawfully detained and searched him in violation of the Fourth Amendment.

(Compl. 6.) In Claim Two, Wilson contends that, in violation of the Fourth Amendment,

Officer falsely arrested Wilson on October 21, 2015, when he, "without probable cause

[and] against protest [and] by force, placed [Wilson] in restraints [or] cuffs." (*Id.*)

Officer Woods argues that he "had both reasonable suspicion and probable cause to

believe [Wilson] had attempted to commit a felony at CVS (pursuant to Virginia Code

§ 18.2–26)."[5] (Mem. Supp. Mot. Summ. J. 10, ECF No. 70.) Officer Woods also argues

that he "had a sufficient basis to detain, arrest, and search Wilson incident to arrest, based

on probable cause to believe that Wilson had attempted to commit a felony at CVS, and

for misdemeanor resisting arrest and obstructing justice in Woods'[s] presence."

(*Id.* at 8.)

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief,

investigatory stop when the officer has a reasonable, articulable suspicion that criminal

---

> If any person have in his possession forged bank notes or forged or base coin, such as are mentioned in § 18.2–170, knowing the same to be forged or base, with the intent to utter or employ the same as true, or to sell, exchange, or deliver them, so as to enable any other person to utter or employ them as true, he shall, if the number of such notes or coins in his possession at the same time, be ten or more, be guilty of a Class 6 felony; and if the number be less than ten, he shall be guilty of a Class 3 misdemeanor.

Va. Code Ann. § 18.2–173 (West 2019).

[5] Va. Code Ann. § 18.2–26 sets forth the punishment for "[a]ttempts to commit noncapital felonies." Va. Code § 18.2–26 (West 2019).

activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "[The Supreme Court has] described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citation omitted).

"'Probable cause,' for Fourth Amendment purposes, means 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (quoting *Michigan v. De Fillippo*, 443 U.S. 31, 37 (1979)). Specifically, "[p]robable cause is determined from the totality of the circumstances known to the officer at the time of the arrest." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002) (citing *United States v. Garcia*, 848 F.2d 58, 59–60 (4th Cir. 1988)).

"Whether probable cause exists in a particular situation therefore always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Id.* (citing *Sevigny v. Dicksey*, 846 F.2d 954, 956 (4th Cir. 1988)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his [or her] presence, he [or she] may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Relatedly, claims of false arrest that are brought pursuant to § 1983 "are properly analyzed as unreasonable seizures under the Fourth Amendment." *McPhearson v. Anderson*, 874 F. Supp. 2d 573, 580 (E.D. Va. July 6, 2012) (citation omitted) (internal quotation marks omitted). To establish an unreasonable seizure under the Fourth Amendment, Wilson must demonstrate that Officer Woods arrested him without probable cause. *See Brown*, 278 F.3d at 367 (citations omitted). Further, if an arrest is lawful, the officer may lawfully conduct a search incident to the arrest. *Kelly v. Connor*, 769 F. App'x 83, 90 (4th Cir. 2019) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993); *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

Here, Wilson contends that Officer Woods "never confirmed with the CVS employee what the situation was, [and] [neither] did the CVS employee make a complaint related to [Wilson] attempting to 'pass, cash, issue . . . a stolen check.'" (Compl. 5–6 (last alternation in original).) However, the record establishes that Wilson left the CVS after his initial interaction with Officer Woods, (Woods Decl. ¶ 8; *see* Compl. 3), and Wilson was not present when Officer Woods spoke with the store manager at CVS. (Woods Decl. ¶ 9.) Therefore, besides Wilson's vague and conclusory allegations, he presents no evidence to support his assertion that Officer Woods "never confirmed with the CVS employee what the situation was." (Compl. 5.)

Instead, the record establishes that, as a result of Officer Woods's investigation at the CVS, which included first speaking to Wilson and then separately speaking with the store manager, Officer Woods determined that "[he] had probable cause to believe that

[Wilson] committed or attempted to commit a check fraud felony." (Woods Decl. ¶ 13.) Officer Woods reasonably determined there was probable cause that Wilson had committed or attempted to commit the felony of issuing bad checks based on Wilson's conduct "as known to [Officer Woods]" and "the contours of the offense thought to be committed by that conduct." *Pritchett*, 973 F.2d at 314 (citation omitted); *see* Va. Code Ann. § 18.2–181.1 (West 2019).

Subsequently, based on Officer Woods's determination regarding the existence of probable cause for the felony of check fraud or attempted check fraud, Officer Woods "continued [his] investigation and attempted to again make contact with Wilson." (Woods Decl. ¶ 13.) The record establishes that Officer Woods "observed Wilson again in the 1800 block of East Main Street," and Officer Woods "advised Wilson that [Officer Woods] needed to speak with him, but he continued to walk away while recording [Officer Woods] on his cell phone." (*Id.*; *see* Compl. 3–4.) Officer Woods then "advised Wilson that he was not free to leave due to the investigation." (Woods Decl. ¶ 14.) "Wilson continued to walk away, yelling and making a scene." (*Id.*) As "Wilson was trying to leave the scene, . . . [Officer Woods] was concerned that [Wilson] would fight back as the encounter continued." (*Id.* ¶ 15.) Furthermore, "[b]ased on the information gleaned from CVS, [Officer Woods] believed that Wilson had attempted to commit a felony by passing bad checks at the CVS. [Officer Woods] also believed that Wilson resisted arrest and obstructed [Officer Woods's] investigation." (*Id.* ¶ 19.)

Officer Woods contends that "due to [Wilson's] resistance and obstruction of Woods'[s] investigation[,] Woods had reason to believe that . . . these actions constituted a misdemeanor violation of Virginia Code § 18.2–460,"[6] and that, "not only based on the probable cause developed at CVS, but due to [Wilson's] resistance and obstruction of [Officer] Woods'[s] investigation," Officer Woods determined "it was necessary to arrest Wilson." (Mem. Supp. Mot. Summ. J. 11 (internal citation omitted).) The undisputed facts establish that Wilson did not cooperate with Officer Woods during his investigation, and under these circumstances, Officer Woods reasonably determined that Wilson was resisting and obstructing Officer Woods's investigation (*see, e.g.*, Woods Decl. ¶¶ 14–17; Compl. 5), which is a Class 1 misdemeanor under Va. Code Ann. § 18.2–460. As noted above, when, as is the case here, "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. *Atwater*, 532 U.S. at 354.

Furthermore, during this interaction, "[Officer Woods] was the sole officer at the scene with Wilson," and "[Officer Woods] made the decision to place [Wilson] in cuffs due to his evasive behavior, and aggressive posturing." (Woods Decl. ¶ 15.) Even when no probable cause exists, "the use of handcuffs [does] not convert [an] encounter into a

---

[6] Va. Code Ann. § 18.2–460 provides, in pertinent part:

> If any person without just cause knowingly obstructs . . . any law-enforcement officer, . . . in the performance of his [or her] duties as such or fails or refuses without just cause to cease such obstruction when requested to do so by such . . . law-enforcement officer, . . . is guilty of a Class 1 misdemeanor.

Va. Code Ann. § 18.2–460 (West 2019).

custodial arrest [when] the use was reasonably necessary to protect the officer's safety." *United States v. Hamlin*, 319 F.3d 666, 671 (4th Cir. 2003). "During [lawful] *Terry* stops, officers may take 'steps reasonably necessary to maintain the status quo and to protect their safety.'" *Id.* (citation omitted)). Therefore, even assuming, for the sake of argument, that Officer Woods had a reasonable, articulable suspicion of criminal activity, but did not have probable cause of such activity, based on Wilson's resistance, "evasive behavior, and aggressive posturing," as the sole officer on the scene, Officer Woods's actions, including handcuffing Wilson, were reasonably necessary to protect Officer Woods's safety. (Woods Decl. ¶ 15); *see Hamlin*, 319 F.3d at 671 (citation omitted). Thus, because Officer Woods had probable cause to detain Wilson on October 21, 2015, Wilson is unable to demonstrate that Officer Woods unlawfully detained or falsely arrested him. *See Brown*, 278 F.3d at 367 (citations omitted). Furthermore, because "[i]t is the fact of the lawful arrest which establishes the authority to search," Wilson is unable to demonstrate that Officer Woods unlawfully searched him. *Kelly*, 769 F. App'x at 90 (quoting *Robinson*, 414 U.S. at 235). Accordingly, Claims One and Two will be dismissed.

### B. Claim Three (a) and (b) – False Arrest and Malicious Prosecution Based on the Issuance of the Arrest Warrant

In Claim Three (a), Wilson contends that Officer Woods falsely arrested him on December 15, 2015,[7] "when [Officer Woods] ([in the] absence of probable cause [and]

---

[7] Wilson indicates that Officer Woods obtained "a warrant for [Wilson's] arrest for forgery on 12/15/2015." (Compl. 6.) However, the two arrest warrants submitted by Officer Woods, reflect that one arrest warrant was issued on December 4, 2015, and the second arrest warrant was

[in] sheer malice) obtained a warrant for [Wilson's] arrest for forgery." (Compl. 6.) Relatedly, in Claim Three (b), Wilson contends that Officer Woods maliciously prosecuted Wilson when he obtained the warrant for Wilson's arrest in the "absence of probable cause." (*Id.*)

### 1.  Claim Three (a) – False Arrest

As noted above, actions brought under § 1983 based upon claims of false arrest "are properly analyzed as unreasonable seizures under the Fourth Amendment," and to establish an unreasonable seizure under the Fourth Amendment, Wilson must demonstrate that Officer Woods arrested him without probable cause. *McPhearson*, 874 F. Supp. 2d at 580 (citation omitted) (internal quotation marks omitted); *see* Brown, 278 F.3d at 367 (citations omitted). "A finding of probable cause to arrest is proper when 'at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" *United States v. Garcia*, 848 F.2d 58, 59–60 (4th Cir. 1988) (quoting *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)). Furthermore, to establish that a false arrest claim premised on the assertion that an arrest warrant was not supported by probable cause, a plaintiff "must prove that [the officer] deliberately or with a 'reckless disregard for the truth' made material false statements in [the officer's] affidavit [in support of the warrant]." *Miller v. Prince George's Cty, Md.*, 475 F.3d 621, 627 (4th Cir. 2007) (citation omitted).

---

issued on December 18, 2015, and both were subsequently executed and served on February 12, 2016. (ECF No. 70-2, at 2, 4.) This difference in the date on which Wilson contends Officer Woods obtained the arrest warrants does not impact the Court's analysis of Wilson's claims.

"Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported."

*Id.* (citations omitted) (alteration in original). "With respect to omissions, 'reckless disregard' can be established by evidence that a police officer 'failed to inform the judicial officer of facts [he or she] knew would negate probable cause.'" *Id.* (citations omitted). Any "'allegations of negligence or innocent mistake' by a police officer will *not* provide a basis for a constitutional violation." *Id.* at 627–28 (citation omitted).

Here, the record establishes that, as a result of Officer Woods's investigation on October 21, 2015, Officer Woods determined that Wilson's "checks appeared to be copies, and [it] looked as though the dollar amounts were altered on one of the checks. Both checks contained the name 'Claude Wilson', and a New York address." (Woods Decl. ¶ 23.) Subsequently, at a later time, "[Officer Woods] called Wells Fargo's fraud department to further investigate Wilson's attempt to pass bad checks at CVS." (*Id.* ¶ 30.) "The fraud department informed [Officer Woods] that there were some issues with [Wilson's] account, and that they would be willing to testify against him in court." (*Id.* ¶ 31.) Thereafter, "[b]ased off of the information provided by [the store manager] at CVS, the suspicious nature of the checks, and the information provided by Wells Fargo, [Officer Woods] obtained warrants against Wilson for violation of Section 18.2–181.1, Code of Virginia, Issuance of Bad Checks." (*Id.* ¶ 32.)

Wilson presents no evidence to support his conclusory assertion that Officer Woods obtained an arrest warrant without probable cause. (*See* Compl. 6.) Instead, the

record establishes that based on Officer Woods's investigation, he reasonably determined that "[he] had probable cause to believe that [Wilson] committed or attempted to commit a check fraud felony." (Woods Decl. ¶ 13.) Subsequently, Officer Woods also communicated with Wells Fargo's fraud department, and determined that Wilson's account had issues related to the investigation. (*Id.* ¶ 30.) Therefore, based on Officer Woods's investigation, he reasonably believed that probable cause existed that Wilson had committed or attempted to commit the felony of issuing bad checks and the misdemeanor of having in possession forged bank notes. *See Pritchett*, 973 F.2d at 314 (citation omitted); *see* Va. Code Ann. § 18.2–181.1 (West 2019); Va. Code Ann. § 18.2–173 (West 2019).

Moreover, besides Wilson's conclusory assertions, which do not constitute admissible evidence, Wilson has proffered no evidence that "when viewing all the evidence, [Officer Woods] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Miller*, 475 F.3d at 627. Furthermore, after Officer Woods requested the arrest warrant, the "probable cause determination" was made by a "neutral and detached magistrate." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d, 178, 184 (4th Cir. 1996) ("Once a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant—either by detention or by bond restrictions—is reasonable." (citation

omitted)). Thus, Wilson has failed to demonstrate that Wilson falsely arrested him based on the issuance of the arrest warrant. Accordingly, Claim Three (a) will be dismissed.

### 2.    Claim Three (b) – Malicious Prosecution

"[A] 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)); *see Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 616 (E.D. Va. 2010) (explaining that "a malicious prosecution claim under § 1983 essentially requires a preliminary showing of 'unlawful arrest' under § 1983"). In order to establish a malicious prosecution claim under § 1983, the United States Court of Appeals for the Fourth Circuit has held that the plaintiff must demonstrate that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)).

Furthermore, "the causation element requires a showing of 'both but-for and proximate causation,' and 'subsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure.'" *Bryant v. Carico*, 616 F. App'x 84, 85 (4th Cir. 2015) (quoting *Evans*, 703 F.3d at 647). When, as is the case here, an officer "sought and obtained

arrest warrants from an independent magistrate," in the absence of any "evidence that [the officer] proffered false or misleading evidence [to the magistrate]," "the probable cause determinations of [the] third part[y,] [such as the magistrate,] are the proximate cause of [the plaintiff's] arrest and detention." *Mead v. Shaw*, 716 F. App'x 175, 178 (4th Cir. 2018) (citing *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012)).

Here, "[b]ased off of the information provided by [the store manager] at CVS, the suspicious nature of the checks, and the information provided by Wells Fargo," (Woods Decl. ¶ 32), Officer Woods sought, and subsequently obtained, warrants for Wilson's arrest from a Virginia magistrate. (ECF No. 70-2, at 2–5.) Although Officer Woods presented evidence to the magistrate to obtain the arrest warrant, there is no evidence that Officer Woods "proffered false or misleading evidence." (*See id.*); *see also Mead*, 716 F. App'x at 178. Therefore, the probable cause determinations of the magistrate, rather than Officer Woods, were the proximate cause of Wilson's arrest and detention. *See Mead*, 716 F. App'x at 178. Thus, Wilson has failed to demonstrate the existence of a genuine dispute of material fact as to his claim that Officer Woods maliciously prosecuted Wilson when he obtained the arrest warrant from the magistrate. Accordingly, Claim Three (b) will be dismissed.

### C.    Claim Four (a) and (d)

#### 1.    Claim Four (a) – Use of Force on October 21, 2015

In Claim Four (a), Wilson contends that on October 21, 2015, Officer Woods "us[ed] excessive force" against Wilson in violation of the Fourth Amendment. (Compl. 6.)

The "right to be free of unreasonable seizures" under the Fourth Amendment includes a right to be free from "seizures accomplished by excessive force." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citing *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003)). "The test for whether force employed to effect a seizure is excessive is one of 'objective reasonableness under the circumstances.'" *Id.* (citation omitted) (some internal quotation marks omitted).

"[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citations omitted). Answering this question "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted). Further, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).

Here, Wilson contends that in the process of handcuffing him, "Officer Woods twisted [his] left wrist until he was in so much pain he was forced to submit his arms to be cuffed." (Compl. 4.) Wilson also contends that "[o]nce cuffed, Officer Woods stomped on the back of [Wilson's] heel." (*Id.*)[8]

As discussed above, the record establishes that prior to handcuffing Wilson, Officer Woods had, at a minimum, a reasonable, articulable suspicion that Wilson had committed a felony, and when Officer Woods, the sole officer on the scene, attempted to investigate, Wilson repeatedly attempted to leave the scene, "refused to cooperate," and "resisted [Officer Woods's] attempt to restrain him, and place him in handcuffs." (Woods Decl. ¶¶ 14–17); *see Graham*, 490 U.S. at 397. "Wilson was trying to leave the scene and [Officer Woods] was concerned that [Wilson] would fight back as the encounter continued." (*Id.* ¶ 15.) Under these circumstances, Officer Woods, "the sole officer at the scene with Wilson, . . . made the decision to place [Wilson] in cuffs due to his evasive behavior, and aggressive posturing." (*Id.*)

Under the totality of the circumstances, the record establishes that Officer Woods used reasonable force when detaining Wilson. Specifically, in light of Wilson's continued attempts to leave the scene, the fact that Officer Woods was the sole officer on the scene, and that Wilson resisted and was noncompliant, Officer Woods's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Graham*, 490 U.S. at 397 (citations omitted). Thus, Wilson is unable to establish a

---

[8] The Court notes that after Wilson was taken into custody based on an active warrant for a prior failure to appear, a "deputy and nurse examined [Wilson], but did not locate any injuries." (Woods Decl. ¶ 29.)

Fourth Amendment excessive force claim against Officer Woods. Accordingly, Claim Four (a) will be dismissed.

## 2. Claim Four (d) – Assault and Battery on October 21, 2015

In Claim Four (d), Wilson contends that Officer Woods's use of force on October 21, 2015 constituted "the tort of assault [and] battery." (Compl. 6.)

In Virginia, "[t]he tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003) (citations omitted). "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Id.* (citations omitted). The difference between the two torts is that battery involves "physical contact," and assault involves the "mere apprehension of [physical contact]." *Id.* (citations omitted).

"Under Virginia law, the torts of assault and battery are defeated if the officer had legal justification for the act." *Lee v. Marks*, No. 3:11CV815–JAG, 2013 WL 775379, at *8 (E.D. Va. Feb. 28, 2013) (citing *Koffinan v. Garnett*, 574 S.E.2d 258, 261 (2003)). Furthermore, "Virginia police officers are lawfully justified to use reasonable force in furtherance of their duties." *Id.* (citing *McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 2004); *Pike v. Eubank*, 90 S.E.2d 821, 827 (1956)). Here, as discussed above, during Officer Woods's interaction with Wilson, Officer Woods used reasonable force under the circumstances of this case. Thus, Wilson is unable to demonstrate that Officer Woods

"committed the tort of assault [and] battery." (Compl. 6.) Accordingly, Claim Four (d) will be dismissed.

## IV. WILSON'S MOTION FOR SUMMARY JUDGMENT

Wilson also moves for summary judgment. (ECF No. 63.) In his Motion for Summary Judgment, rather than address the merits of his claims, Wilson argues that, in Officer's Woods's previously filed Motion to Dismiss, Officer Woods did "not den[y] any of Plaintiff's verified claims," and as such, Officer Woods "has failed to contest the monetary damages of $600,000.00." (*Id.* at 1.) Thus, Wilson's Motion for Summary Judgment does not provide a basis for granting such relief.

Furthermore, as detailed above, upon review of Wilson's and Officer Woods's motions, Officer Woods is entitled to summary judgment as to all remaining claims. Accordingly, Wilson's Motion for Summary Judgment will be denied.

## V. CONCLUSION

For the foregoing reasons, Officer Woods's Motion for Summary Judgment (ECF No. 68) will be granted. Wilson's Motion for Summary Judgment (ECF No. 63) will be denied. The action will be dismissed.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

Date: Sept. 20, 2019          HENRY E. HUDSON
Richmond, Virginia            SENIOR UNITED STATES DISTRICT JUDGE